UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ARTURO REYES, § | | |
| TDCJ #01248486, § | | |
| § | | |
| Plaintiff, § | | |
| VS. § | | CIVIL ACTION NO. 3:16-CV-0314 |
| § | | |
| HAROLD RAZOR, *et al*, § | | |
| § | | |
| Defendants. § | | |

## **MEMORANDUM OPINION AND ORDER**

The plaintiff, Arturo Reyes, ("Plaintiff"), is a state inmate who is currently in the custody of the Texas Department of Criminal Justice-Correctional Institutions Division ("TDCJ-CID") at the Terrell Unit in Rosharon, Texas (Dkt.1). Plaintiff, proceeding *pro se* and *in forma pauperis*, filed this complaint alleging a violation of his civil rights under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131 *et seq*. ("ADA"), and section 504 of the 1973 Rehabilitation Act, 29 U.S.C. § 794 ("RA").

Defendants have filed a Motion to Dismiss (Dkt. 9) contending that Plaintiff did not exhaust his available administrative remedies, and alternatively, fails to state a claim for which relief may be granted for any of his claims against any defendant. Plaintiff has filed a response in opposition to the motion, requesting leave to amend his Complaint if it is not sufficient to state a claim (Dkt. 10). The Court has considered the motion, pleadings, response, and applicable law, and concludes that Defendants' motion to dismiss should be **denied** on exhaustion grounds but **conditionally granted** because

Plaintiff fails to plead a viable claim for relief. The Court **grants** Plaintiff's request for leave to amend his pleadings.

I. **BACKGROUND**

Plaintiff, a below-the-knee amputee, alleges that on April 13, 2016, he was seen at the University of Texas Medical Branch-Correctional Managed Health Care ("UTMB-CMHC") Brace and Limb Clinic for problems with his prosthetic leg (Dkt. 1 at 6). In order to make adjustments, the clinic kept his prosthetic leg (*Id*.). After the appointment, Plaintiff requested transport back to the Terrell Unit by handicap van (*Id*.).

When a standard prison bus arrived to transport Plaintiff back to the Terrell Unit, Plaintiff protested because he did not have his prosthetic leg with him at that time (*Id*.). Plaintiff claims that Transportation Officer Harold Razor ("Razor") and another unidentified officer ("Doe") threatened to have him placed in pre-hearing detention and issue a major disciplinary charge if Plaintiff did not "hop up" into the standard bus (*Id*.). Due to these threats, Plaintiff complied. When he arrived at the Terrell Unit, he was instructed to "hop off" the bus. Plaintiff alleges that when he hopped off the bus he fell and injured himself (*Id*.). Plaintiff alleges that the defendant-officers violated his Eighth Amendment rights and rights under the ADA/RA because they knew he was an amputee in handcuffs and forced him to use transportation that was unsafe and resulted in his injury (*Id*. at 6-7).

Plaintiff also contends that Lorie Davis ("Davis"), as the Executive Director of TDCJ-CID, is liable for failing to supervise and train the officers in the Transportation Department regarding the proper way to transport amputees (*Id*. at 7). Plaintiff seeks a

declaratory judgment that defendants violated his rights and compensatory relief for physical and mental pain (*Id*. at 4).

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) may be granted if the pleading "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion, courts generally must accept the factual allegations contained in the complaint as true. *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009). Federal pleading rules require "only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009); *see Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 617 (5th Cir. 2012). The pleadings also must claim that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

"Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). Where, as here, a plaintiff proceeds *pro se*, his pleadings must be "liberally construed," even if "inartfully pleaded," and "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation and quotation marks omitted); *accord Alexander v. Wells Fargo Bank, N.A.*, 867 F.3d 593, 601 & n.36 (5th Cir. 2017) (declining to strictly construe *pro se* litigant's pleadings in context of motion to dismiss).

## III. DISCUSSION

### A. Exhaustion of Available Administrative Remedies

Defendants first contend that Plaintiff did not exhaust his administrative remedies properly because he did not raise his instant claims regarding his April 13, 2016 fall in any grievance. The PLRA requires that an inmate exhaust all available administrative remedies before he may maintain a lawsuit in federal court. *See* 42 U.S.C. § 1997e(a). The exhaustion requirement applies to all inmate suits about prison life, including lawsuits alleging excessive force. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "Exhaustion is defined by the prison's grievance procedures, and courts neither may add to nor subtract from them." *Cantwell v. Sterling*, 788 F.3d 507, 509 (5th Cir. 2015). Because exhaustion of remedies is an affirmative defense, it is the defendant's burden to establish that there were available procedures that the inmate did not exhaust, and what those procedures were. *Id*.

The PLRA requires prisoners to exhaust administrative remedies because Congress wanted to "afford[] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter*, 534 U.S. at 525. To that end, "[the prisoner's] grievances must alert prison officials to a problem and give them an opportunity to address it." *Johnson v. Johnson*, 385 F.3d 503, 516–23 (5th Cir. 2004). The grievance need not set out legal theories; it must simply provide "fair notice of the problem that will form the basis of the prisoner's suit." *Id*. (quotation marks omitted). The context-specific fair notice standard determines how much factual detail is required to exhaust a claim. *Id*. For example, a grievance can sufficiently identify an

unnamed person if that person's identity and role in the Constitutional deprivation are ascertainable from the information provided in the grievance—the *Johnson* court gave the example of referring to "the guards in the shower room" on a particular date. *Id*.

Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact. *Dillon*, 596 F.3d at 266. "Similarly, while it is a question of law whether administrative remedies qualify as being 'available' under 42 U.S.C. § 1997e(a), availability may sometimes turn on questions of fact." *Id*.

The Supreme Court's recent *Ross v. Blake* opinion sets out "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief" and hence unavailable: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates[;]" (2) when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it" because "no ordinary prisoner can make sense of what it demands[;]" and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." 136 S. Ct. 1850, 1858–60 (2016). If a remedy is unavailable, it need not be exhausted. *Id*.

Defendants argue that Plaintiff did not properly exhaust his available state remedies because his Step Two grievance, which he attaches to his complaint, does not mention the April 13, 2016 incident regarding his fall or the lack of provision of a handicap bus. Plaintiff contends that Defendants' claim is without merit because in his Step Two grievance he was replying to TDCJ's response to his Step One grievance, and

that TDCJ's reply was "typical of the wide-spread diversionary tacti[c]s used to misdirect inmate(s) complaints with the dual intent of early termination of offe[nd]er grievances and to subvert their civil rights" (Dkt. 10 at 2). Without the Step One grievance and competent summary judgment evidence, it is not possible to determine, at the motion to dismiss stage, whether Plaintiff properly exhausted his available state remedies. Defendants' motion to dismiss on exhaustion grounds is denied.

### B. Failure to State a Claim

Defendants alternatively argue that Plaintiff has not alleged facts to state a viable claim under either the Eighth Amendment or the ADA/RA.

#### 1. Official Capacity Claims—Eighth Amendment

A claim against a TDCJ official in his or her official capacity is a claim against TDCJ, and thus a claim against the State of Texas. *See Mayfield v. Tex. Dep't of Crim. Justice*, 529 F.3d 599, 604 (5th Cir. 2008). Because the Eleventh Amendment bars actions for damages in federal court under section 1983, "only prospective equitable relief is available." *Shisinday v. Johnson*, 234 F.3d 28, 2000 WL 1568146, at *3 (5th Cir. 2000). *See Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 169 (1985) (implementation of state policy or custom may be reached in federal court only because official-capacity actions for prospective relief are not treated as actions against the State). Therefore, Plaintiff's claims for monetary relief under section 1983 against the Defendants in their official capacities are barred by the Eleventh Amendment and must be dismissed.

## 2. Individual Capacity Claims—Eighth Amendment

The Eighth Amendment's prohibition against cruel and unusual punishment forbids deliberate indifference to a substantial risk of serious harm to an inmate. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). To state a claim for deliberate indifference, a plaintiff must plead facts to show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*; *see also Lawson v. Dallas County,* 286 F.3d 257, 262 (5th Cir. 2002); *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002). Deliberate indifference is an "extremely high standard to meet," *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006), because it "requires a showing that the prison official 'knows of and disregards' the substantial risk of serious harm facing the inmate." *Morgan v. Hubert*, 459 F. App'x 321, 326 (5th Cir. 2012) (quoting *Farmer*, 511 U.S. at 837).

Notably, "deliberate indifference cannot be inferred merely from negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 459 (5th Cir. 2001). Rather, "[i]t is the 'obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the [Eighth Amendment], whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.'" *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). "Deliberate indifference

encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997) (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)).

Plaintiff alleges that when he protested boarding the regular bus because he did not have his prosthetic leg with him, Razor threatened to give him a disciplinary case if he did not hop on the bus. Plaintiff alleges that he hopped on the bus without incident, but that when he hopped off the bus he fell and hurt himself. Taking the allegations as true, Plaintiff does not plead facts to show that Razor or Doe subjectively knew that Plaintiff was exposed to a substantial risk of serious harm when he was instructed to hop off the same bus he had successfully hopped onto at the beginning of the transport. In that regard, Plaintiff does not show that Razor and Doe's actions amounted to anything more than negligence or gross negligence. "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." *Mace v. City of Palestine,* 333 F.3d 621, 626 (5th Cir. 2003). Because Plaintiff does not plead facts to show that either Razor or Doe was deliberately indifferent to a substantial risk of serious harm to him, Plaintiff's claims against them under the Eighth Amendment are subject to dismissal.

Likewise, Plaintiff fails to state facts to show that Davis was deliberately indifferent to a substantial risk of serious harm to his safety. He does not allege facts to show that Davis was personally involved in the incident at issue or that she implemented a policy that resulted in a constitutional injury to Plaintiff. *See Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).

Plaintiff generally alleges that Davis failed to train the transportation officers. To show a failure to train, a plaintiff must plead facts to show that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Mesa v. Prejean,* 543 F.3d 264, 274 (5th Cir. 2008) (internal quotation marks and citation omitted). To satisfy deliberate indifference in the context of failure to train, the plaintiff must "demonstrate a pattern of violations" and show that the defendant's actions were "obviously likely to result in a constitutional violation." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (citations and internal quotation marks omitted); *see also Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001) (holding that a plaintiff alleging failure to train generally must demonstrate a pattern of similar violations); *Burge v. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003) (holding that to show deliberate indifference in failing to train, a supervisor must be aware "of more than a single instance of the lack of training or supervision causing a violation of constitutional rights").

Here, there is no indication of a pattern of violations regarding prison transport such that Davis would be apprised that there was a problem with training that was obviously likely to result in a constitutional violation. In addition, Plaintiff pleads no facts to show that Davis was deliberately indifferent to a substantial risk of serious harm regarding training transportation officers. Accordingly, Plaintiff's Eighth Amendment

claims must be dismissed for failure to state a claim for which relief may be granted against any defendant.

### 3. ADA/RA

As Defendants point out, state officials cannot be sued in their individual capacities under the ADA and RA as a matter of law. "Only public entities are subject to Title II." *City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1773 (2015) (citing, *e.g.*, *Pennsylvania Dept. of Corrections v. Yeskey*, 118 S. Ct. 1952, 1954-55 (1998)); *see also Lollar v. Baker*, 196 F.3d 603, 608-09 (5th Cir. 1999). Therefore, Plaintiff's ADA/RA claims against the existing defendants in their individual capacities must be dismissed.

To the extent that Plaintiff's complaint may be liberally construed to assert a claim under the ADA/RA against the TDCJ through Davis in her official capacity, he fails to state a claim for relief against TDCJ under the ADA/RA. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (West 2017). To state a claim under Title II of the ADA, a plaintiff must plead facts to indicate "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011). The Fifth Circuit applies the same standards and the same remedies to Title II claims as to

those brought under the RA. *See Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000) (quoting H.R. Rep. No. 101-485, pt. III at 49-50 (1990)); *see also Frame v. City of Arlington*, 657 F.3d 215, 225 (5th Cir. 2011).

"A showing of intentional discrimination is essential to success on an ADA claim." *Back v. Texas Dep't of Criminal Justice*, 716 F. App'x 255, 258 (5th Cir. Dec. 11, 2017) (per curiam) (citing *Delano-Pyle v. Victoria Cnty.*, 302 F.3d 567, 575 (5th Cir. 2002)). Assuming that Plaintiff's status as an amputee makes him a qualified individual under the ADA/RA, Plaintiff pleads no facts that would give rise to a reasonable inference that TDCJ intentionally discriminated against him on the basis of his disability. He pleads no facts to show that TDCJ systemically denies handicap accessible transportation for inmates with disabilities; the gravamen of his complaint is that two transportation officers, one time, showed up with a standard bus and made him hop on rather than calling for a handicap bus to pick him up. "Isolated acts of negligence by a [government] employee do not come within the ambit of discrimination against disabled persons proscribed by the ADA." *Foley v. City of Lafayette, Ind.*, 359 F.3d 925, 930-31 (7th Cir. 2004). Because Plaintiff does not plead facts to indicate that TDCJ excludes him from the benefits of services, programs, or activities because of his disability, his ADA/RA claims are also subject to dismissal for failure to state a claim for which relief may be granted.

## IV. CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1. Plaintiff's request for leave to amend (Dkt. 10) is **GRANTED**, and Defendants' Motion to Dismiss (Dkt. 9) is conditionally **GRANTED**. This case will be **DISMISSED** in **thirty (30) days** unless the Plaintiff submits an Amended Complaint, if he can do so in compliance with Federal Rule of Civil Procedure 11(b), that cures the deficiencies in his Complaint.

2. Plaintiff's Motion for Discovery (Dkt. 12) is **DENIED** at this time.

3. Defendants' Motion for a Protective Order (Dkt. 13) is **GRANTED**, and discovery is **STAYED** until after an Answer is filed, if applicable.

The Clerk will provide a copy of this order to all parties of record.

SIGNED at Galveston, Texas, this 30th day of July, 2018.

_____
George C. Hanks Jr.
United States District Judge